D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

OHIO CASUALTY INSURANCE CO.,

            Plaintiff,

       -against-

TWIN CITY FIRE INSURANCE CO.,

            Defendant.
----------------------------------------------------------------X

MEMORANDUM & ORDER

14-CV-858 (NGG) (PK)

NICHOLAS G. GARAUFIS, United States District Judge.

This case involves a dispute in which Plaintiff Ohio Casualty Insurance Company, an excess liability insurer, alleges that Defendant Twin City Fire Insurance Company, a primary insurer, breached its duty of good faith and fair dealing by failing to settle an underlying personal injury action (the "Underlying Action") within the liability limits of the primary policy. (Am. Compl. (Dkt. 69).) Plaintiff argues that Defendant should be found liable for Plaintiff's $4 million payment to settle the Underlying Action, plus interest and costs. (Id. ¶ 60.)

Defendant has submitted three motions in limine seeking to strike Plaintiff's claim for attorney's fees and to preclude or permit the admission of certain evidence at trial. (First Mot. in Lim. ("First Mot.") (Dkt. 87); Second Mot. in Lim. ("Second Mot.") (Dkt. 88); Third Mot. in Lim. ("Third Mot.") (Dkt. 89).) For the reasons set forth below, Defendant's first motion in limine is DENIED in part as moot, with the court RESERVING judgment on one issue; Defendant's second motion in limine is GRANTED; and Defendant's third motion in limine is DENIED.

1

## I. BACKGROUND

The court assumes the parties' familiarity with the factual background and procedural history in this matter and thus will summarize only those facts relevant to the instant motions.

This case concerns two insurance policies: (1) a primary commercial auto policy issued by Defendant to American Recycling Technologies, Inc. ("American Recycling") with a liability limit of $1 million (Am. Compl. ¶ 11); and (2) an excess liability policy issued by Plaintiff to American Recycling with an excess liability limit of $4 million (id. ¶ 13). Plaintiff's policy provided excess coverage over the primary commercial auto policy maintained by American Recycling. (Id.)

In 2005, Juan Sanchez, an employee of American Recycling, got into an automobile accident with Osmin Aguilar. (Id. ¶ 16.) Aguilar filed a lawsuit in New York state court against Sanchez, among other defendants, seeking damages for the injuries he sustained in the accident. (Id. ¶ 17.)

Defendant's counsel prepared a pre-trial report on or about October 6, 2010, in which it predicted that: (1) there was a 50% chance Defendant would obtain a defense verdict; (2) Aguilar could be awarded damages as high as $5 million; and (3) the average outcome, finding each party 50% at fault, would result in a $2.5 million judgment. (June 26, 2018 Memorandum and Order ("M&O") at 3-4.) The second pre-trial report, prepared on or about August 16, 2012, and third pre-trial report, prepared on or about February 21, 2013, were consistent with the first. (Id. at 4.)

On February 1, 2013, Defendant informed Plaintiff that the trial of the Underlying Action was scheduled for March 18, 2013. (Id. at 6.) This was the first time Defendant contacted Plaintiff on the matter in seven years. (Id.) On March 7, 2013, Plaintiff sent Defendant a letter

2

demanding that Defendant advise Plaintiff of any future settlement negotiations, and that Defendant settle the case within the primary-policy limit of $1 million. (Id.) On March 13, 2013, Defendant's counsel spoke with Aguilar's counsel regarding settlement. (Id.) Aguilar's counsel informed Defendant's counsel that Aguilar's bottom line to settle pre-trial was $850,000 and that the formal demand would exceed $1 million. (Id. at 7.) In response, Defendant offered $150,000. (Id.) Aguilar "immediately rejected" the $150,000 offer. (Id.) Defendant did not inform Plaintiff of any of these negotiations, demands, or offers. (Id.)

On March 18, 2013, the Underlying Action went to trial in Supreme Court, Kings County, with the liability and damages phases bifurcated. (See Pl. Resp. to Third Mot. (Dkt. 92) at 3.) In the liability phase, a jury found that Sanchez (Defendant's insured) was 100% liable for the accident. (Id.) At that point, Aguilar increased his demand for settlement from $850,000 to $5 million. (Id. at 2-3.) Defendant then tendered its $1 million limit to Plaintiff, which took over from Defendant and negotiated a settlement. (Id. at 3.) The case ultimately settled for $5 million. (Id.)

On October 7, 2016, Plaintiff filed the Amended Complaint in this case, alleging that Defendant had had the opportunity to settle the Underlying Action within the primary-policy limit of $1 million, and that its failure to do so amounted to a breach of its duty of good faith and fair dealing. (Am. Compl.) To succeed on its bad-faith claim, Plaintiff must demonstrate that: (1) Defendant exhibited gross disregard for the interests of Plaintiff, and (2) this gross disregard caused the loss of an actual opportunity to settle the case within the primary-policy limit. Scottsdale Ins. Co. v. Indian Harbor Ins. Co., 994 F. Supp. 2d 438, 451 (S.D.N.Y. 2014) (citing New Engl. Ins. Co. v. Healthcare Underwriters Mut. Ins. Co., 295 F.3d 232, 241 (2d Cir. 2002)).

3

## II. LEGAL STANDARD

### A. Motions in Limine

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." Gorbea v. Verizon N.Y., Inc., No. 11-CV-3758 (KAM), 2014 WL 2916964, at *1 (E.D.N.Y. June 25, 2014) (citing Luce v. United States, 469 U.S. 38, 40 n.2 (1984); Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996); Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp., 937 F. Supp. 276, 283 (S.D.N.Y. 1996)). "Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." United States v. Paredes, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001). Further, "courts considering a motion in limine may reserve decision until trial, so that the motion is placed in the appropriate factual context." Jean-Laurent v. Hennessy, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011) (citing Nat'l Union Fire Ins. Co., 937 F. Supp. at 287). The court's ruling on a motion in limine is preliminary and "subject to change when the case unfolds." Luce, 469 U.S. at 41.

### B. General Rules of Admissibility

Evidence must be relevant to be admissible at trial. Fed. R. Evid. 402. Evidence is relevant if it "has any tendency to make a fact [that is of consequence to the determination of the action] more or less probable than it would be without the evidence." Fed. R. Evid. 401. This relevance standard is "very low." United States v. White, 692 F.3d 235, 246 (2d Cir. 2012) (quoting United States v. Al-Moayad, 545 F.3d 139, 176 (2d Cir. 2008)). All relevant evidence is admissible unless the United States Constitution, a federal statute, the Federal Rules of Evidence, or rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 402; see also White, 692 F.3d at 246 (2d Cir. 2012).

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "[W]hat counts as the Rule 403 'probative value' of an item of evidence, as distinct from its Rule 401 'relevance,' may be calculated by comparing evidentiary alternatives." Old Chief v. United States, 519 U.S. 172, 184 (1997). In short, Rule 403 requires the court to "make a conscientious assessment of whether unfair prejudice substantially outweighs probative value" with regard to each piece of proffered evidence. Al-Moayad, 545 F.3d at 160 (quoting United States v. Salameh, 152 F.3d 88, 110 (2d Cir. 1998) (per curiam)).

## III. DISCUSSION

### A. First Motion in Limine: Request to Strike Plaintiff's Claim for Attorney Fees and to Preclude Evidence Relating to Claims Not at Issue in this Action

In its first motion in limine (the "First Motion"), Defendant seeks to strike Plaintiff's claim for attorney fees that originally appeared in its complaint. (First Mot. at 1.) Defendant explains that although Plaintiff has not "pursued any claim, or developed any facts, to support the request for attorney fees" (id. at 1), Plaintiff nonetheless asserted in the joint pretrial order that it has a claim for attorney fees (id. at 2; see Proposed Joint Pretrial Order (Dkt. 85)). Defendant also states, without citing to specific documents, that Plaintiff "[r]ecently . . . sought to rescue its request for attorney fees by asserting that it can demonstrate a 'pattern or practice' of bad faith conduct on [Defendant's] part." (First Mot. at 1.) Defendant expresses concerns that Plaintiff might thus seek to introduce evidence of other insurance claims in order to prove this "pattern or practice." (First Mot. at 1-4.) Again, Defendant does not point to any specific documents in support of its "surmise[] that Ohio Casualty's strategy may be to conduct research for cases asserting that Twin City or its corporate affiliates acted in bad faith, and cross-examine

Twin City's witnesses on this basis, asking if they are familiar with Case X or participated in Case Y." (Id. at 4.)

In response, Plaintiff states that it does not plan to seek attorney fees in this case, and that the first motion in limine is therefore moot. (Pl. Resp. to First Mot. (Dkt. 90).) The court notes that, consistent with Plaintiff's representation in its response, Plaintiff removed any reference to attorney fees from Plaintiff's statement of claims in the amended proposed joint pretrial order. (See Proposed Amended Joint Pretrial Order (Dkt. 102) at 3-4.) Defendant's request to strike Plaintiff's claim for attorney fees is thus DENIED as moot. With respect to Defendant's speculation that Plaintiff might seek to introduce evidence of claims unrelated to the Underlying Action, the court RESERVES decision on whether such evidence would be permitted.

### B. Second Motion in Limine: Defendant's Request to Permit the Introduction of Evidence Concerning Plaintiff's Reinsurance Policy

In its second motion in limine (the "Second Motion"), Defendant asks that the court permit the introduction at trial of evidence concerning Plaintiff's own reinsurance policy. (Second Mot. at 1.)

Defendant intends to argue that it was justified in concluding that the Underlying Action was unlikely to exceed its primary policy limit, and that it therefore acted reasonably under the circumstances with respect to settlement discussions and the timing of its communications with Plaintiff. (Second Mot. at 1.) Defendant contends that evidence of the conduct of other insurers in similar circumstances is relevant to this question of reasonableness. (Id.) Accordingly, it seeks to introduce evidence concerning Plaintiff's communications with its own reinsurer regarding the Underlying Action. (Id. at 1-2.) Defendant explains that Plaintiff had its own reinsurance policy that would indemnify it for payments made in excess of $2 million. (Id. at 3-5.) When the Underlying Action was settled for $5 million, Plaintiff had to pay out the full

6

amount of its excess insurance policy ($4 million) (Am. Compl. ¶ 4), which in turn triggered its own excess insurance policy (Id.).

Defendant contends that Plaintiff's communications with its own reinsurer concerning the Underlying Action are relevant for two reasons. First, Defendant insists that they are relevant to the question of whether Defendant was reasonable in its interpretation of the pretrial reports that put the "average" outcome of the Underlying Action at $2.5 million. (Id. at 4.) Plaintiff argues that Defendant "recklessly ignored that the value of [the claim in the Underlying Action] exceeded $1M," and that "in so doing, [Defendant] repeatedly disregarded defense counsel's consistent opinion," expressed in pretrial reports, "that (i) the 'average outcome' at trial would be $2.5M; (ii) there would be a 50% comparative negligence finding; (iii) credibility of witnesses would be a 'significant factor'; and (iv) the parties had 'two completely different stories.'" (Pl. Resp. to Second Mot. ("Pl. Second Resp.") (Dkt. 91) at 2.) Defendant intends to defend against this argument by demonstrating that when Plaintiff received the same pretrial report in February 2013, it did not notify its own excess insurer of the possibility of an excess verdict. (Second Mot. at 4.) This failure to notify, Defendant contends, demonstrates that Plaintiff "did not understand (or did not accept) the pretrial report's prediction about the 'average' $2.5 million outcome as the actual value of the case" and that Plaintiff "did not actually interpret the pretrial reports in the same manner as it will argue at trial." (Id.)

Second, Defendant argues that Plaintiff's failure to notify its own excess insurer about the Underlying Action until after verdict was entered undermines both Plaintiff's assertions about the importance of the pretrial reports and its complaint about Defendant's valuation of, and timeliness in reporting to Plaintiff about, the Underlying Action. (Id. at 4.) Defendant concludes

that Plaintiff "should not be permitted to impugn [Defendant] as acting in bad faith when [Defendant's] conduct was no different than [Plaintiff's]." (Id. at 5.)

Plaintiff counters that its communications with its own reinsurer—which were based on information received from Defendant—are not relevant to any claim or defense in the matter and should be denied under Federal Rules of Evidence 401 and 403. (Pl. Second Resp.) Plaintiff contends that information related to reinsurance is "too attenuated" from the question of Defendant's breach to be relevant for discovery, let alone admissible at trial. (Id. at 4.) Plaintiff further argues that the question of whether Defendant breached its duty to Plaintiff "does not turn on whether (or when) [Plaintiff] notified its reinsurer of the Underlying Action" because the duty that Defendant owed Plaintiff was not the same as the duty owed by Plaintiff to its reinsurer. (Id.) For the same reason, Plaintiff argues, the timing of its communications with its own reinsurer is not a "barometer" against which the reasonableness of Defendant's communications with Plaintiff should be compared. (Id.) Finally, Plaintiff argues that even after Defendant provided it with the pretrial report in February 2013, Defendant informed Plaintiff that the case would settle within the $1 million limit. (Id. at 4-5.) Accordingly, Plaintiff contends, it had no reason to notify its reinsurers of the Underlying Action. (Id. at 5.) Plaintiff's conduct with respect to its own reinsurers is therefore irrelevant to determining the reasonableness of Defendant's actions. (Id.)

Based on Defendant's proffered explanation, the court finds that the communications between Plaintiff and its reinsurer have met the "very low" threshold for relevance, see White, 692 F.3d at 246, and that there is no reason, at this time, to exclude such evidence. See Thomas v. West, No. 14 CV 4459 (LTS), 2019 WL 1206696, at *2 n.1 (S.D.N.Y. Mar. 14, 2019) (noting that "in the context of a bench trial, the risk of prejudicing the factfinder is dramatically

lessened" (citing Serby v. First Alert, Inc., No. 09-CV-4229 (WFK) (VMS), 2015 WL 4488558, at *1 (E.D.N.Y. July 22, 2015))); see also BIC Corp. v. Far Eastern Source Corp., 23 F. App'x 36, 39 (2d Cir. 2001) (observing that "admission of evidence in a bench trial is rarely ground for reversal, for the trial judge is presumed to be able to exclude improper inferences from his or her own decision analysis"). Defendant's motion in limine to allow evidence of Plaintiff's communications with its reinsurer is therefore GRANTED without prejudice to Plaintiff's challenges to particular evidentiary proffers at trial.

### C. Third Motion in Limine: Defendant's Request to Allow Evidence Concerning Plaintiff's Settlement Negotiations in the Underlying Action

In its third motion in limine (the "Third Motion"), Defendant asks the court to permit it to introduce evidence concerning Plaintiff's settlement negotiations with the plaintiff in the Underlying Action. (See Third Mot.)

Defendant contends that Plaintiff's post-verdict settlement conduct is relevant to the question of whether Defendant's pre-verdict approach to settlement was reasonable or "grossly disregarded" Plaintiff's interest. (Third Mot. at 2, 5.) Plaintiff's conduct, Defendant explains, "shows how another experienced insurer – [Plaintiff] – evaluated the very same claim that [Defendant] was handling." (Def.'s Reply in Support of Mots. in Limine ("Reply") (Dkt. 94) at 3.) Defendant stresses that it is not "attacking" Plaintiff's conduct, but is "merely pointing to it as indicative of the fact that both insurers viewed the case similarly." (Id.)

Defendant previously sought discovery of communications pertaining to Plaintiff's settlement negotiations after the liability verdict (Pl. Resp. to Third Mot. at 30), and Magistrate Judge Viktor V. Pohorelsky denied that request, observing that evidence of settlement negotiations after a finding a liability was not relevant because "once you have a finding of liability . . . settlement strategy at that point becomes a vastly different affair from the question of

9

what to do before you have a finding." (Feb. 20, 2015 Hearing Tr. (Dkt. 55) at 11:5-11.) In short, he said, "[i]t's a different case when once you have a finding of liability." (Feb. 20, 2015 Hearing Tr. at 12:21-22.)

The court agrees with Judge Pohorelsky and Plaintiff that Plaintiff's conduct in settling the case after the liability finding "does not bear upon whether [Defendant] breached its duty to [Plaintiff]" (Pl. Resp. to Third Mot. at 4) during the "nearly eight years that [Defendant] handled the claim" prior to that verdict (id. at 2). After the verdict was delivered, Plaintiff was not "evaluating the very same claim." (See Reply at 3.) Finding such evidence irrelevant, the court therefore DENIES Defendant's motion in limine seeking permission to introduce evidence concerning Plaintiff's settlement of the Underlying Action after the liability verdict.

## IV. CONCLUSION

For the foregoing reasons:

- Defendant's First Motion is DENIED as moot, although the court RESERVES decision on whether evidence of claims unrelated to the Underlying Action would be permitted.

- Defendant's Second Motion is GRANTED. Defendant may introduce at trial evidence of Plaintiff's communications with its reinsurer, although Plaintiff may still challenge particular evidentiary proffers at trial.

- Defendant's Third Motion is DENIED. Defendant is precluded from introducing at trial evidence concerning Plaintiff's conduct in settling the Underlying Action after the liability verdict.

SO ORDERED.

Dated: Brooklyn, New York
March 25, 2019

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge

10