UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

OHIO CASUALTY INSURANCE COMPANY,

                Plaintiff,

      -against-

TWIN CITY FIRE INSURANCE COMPANY,

                Defendant.

**ORDER**
14-CV-858 (NGG) (PK)

NICHOLAS G. GARAUFIS, United States District Judge.

Pending before the court is Defendant Twin City Fire Insurance Company's motion for expenses incurred to prove facts not admitted by Plaintiff, which the court referred to Magistrate Judge Peggy Kuo for a report and recommendation ("R&R"). (*See* Mot. for Expenses (Dkt. 115); July 31, 2019 Order Referring Mot.) Judge Kuo issued the annexed R&R on March 23, 2020, recommending that the court deny the motion. (R&R (Dkt. 125) at 14.)

No party has objected to Judge Kuo's R&R, and the time to do so has passed. *See* Fed. R. of Civ. P. 72(b)(2). Therefore, the court reviews the R&R for clear error. *See Gesualdi v. Mack Excavation & Trailer Serv., Inc.*, No. 09-CV-2502 (KAM) (JO), 2010 WL 985294, at *1 (E.D.N.Y. Mar. 15, 2010); *La Torres v. Walker*, 216 F. Supp. 2d 157, 159 (S.D.N.Y. 2000). Having found none, the court ADOPTS the R&R in full and DENIES Defendant's motion.

SO ORDERED.

Dated:    Brooklyn, New York
            April 8, 2020

                                     /s/ Nicholas G. Garaufis
                                     NICHOLAS G. GARAUFIS
                                     United States District Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                                                  :

OHIO CASUALTY INSURANCE COMPANY,    :      **REPORT AND**
                                                  :      **RECOMMENDATION**
                        Plaintiff,        :
                                                  :      14-CV-858 (NGG) (PK)
                -against-                    :

TWIN CITY FIRE INSURANCE COMPANY,  :
                                                  :
                      Defendant.      :
------------------------------------------------------------- X

**Peggy Kuo, United States Magistrate Judge:**

       Before the undersigned on referral from the Honorable Nicholas G. Garaufis is a post-trial Motion for Expenses Incurred to Prove Facts Not Admitted by Plaintiff (the "Motion") (Dkt. 115) filed by Defendant Twin City Fire Insurance Company ("Twin City") against Plaintiff Ohio Casualty Insurance Company ("Ohio Casualty"). For the reasons stated herein, the undersigned respectfully recommends that the Motion be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.     The Underlying Action**

       Twin City issued a $1 million primary commercial auto insurance policy to American Recycling Technologies, Inc. ("ART"). (Trial Memorandum and Order ("M&O") at 1, Dkt. 111.) Ohio Casualty issued an excess liability policy over the primary auto policy to ART with a policy limit of $4 million. (*Id.* at 2.) In 2005, while both policies were in effect, an ART employee, Juan Sanchez, was in a car accident with Osmin Aguilar, who then sued Sanchez and others in New York State Supreme Court, Kings County (the "Underlying Action"). Aguilar sustained serious injuries, including an amputated leg, in the accident. It was undisputed that Aguilar hit Sanchez from

1

behind.[1]  (*Id.* at 1-5.)  ART filed a claim for coverage pursuant to its primary policy, and Twin City assumed responsibility for defending the Underlying Action.  (*Id.* at 5.)  On April 16, 2013, the jury in the Underlying Action found Sanchez one hundred percent responsible for the accident in the liability phase of the trial.  (*Id.* at 31.)  Aguilar then made a demand to settle the case for $5 million, the full amount of insurance coverage.  (*Id.* at 33.)  Twin City tendered its $1 million policy to Ohio Casualty, which then settled the case for $5 million.  (*Id.* at 34.)

II.     **The Action for Breach of Duty of Good Faith**

Ohio Casualty thereafter sued Twin City in the current action, claiming that Twin City breached its duty of good faith in failing to settle the Underlying Action within Twin City's primary policy limit of $1 million, and seeking the $4 million that Ohio Casualty contributed to settling the Underlying Action, along with attorneys' fees and costs.  (*See* Notice of Removal, Dkt. 1.)

At the close of discovery, Ohio Casualty and Twin City cross-moved for summary judgment.  The Court denied both motions, finding that both the questions of whether Twin City as the primary insurer exhibited gross disregard for the interests of Ohio Casualty as the excess insurer, and whether this gross disregard caused the loss of an actual opportunity to settle the case within the primary-policy limit, involved genuine disputes of material fact that are appropriately addressed at trial.  (Memorandum & Order, dated 6/29/18 ("Summary Judgment Order" or "SJO") at 23, Dkt. 81.)  The matter then proceeded to a three-day bench trial, after which the Court found that Twin City did not breach its duty of good faith to Ohio Casualty and directed that judgment be entered in favor of Twin City.  (M&O at 48.)

---

[1] Under New York law, there is a presumption that the following vehicle in a rear-end collision is liable. (M&O at 6.)

2

**III.    The Motion**

Following entry of judgment, Twin City filed the Motion, pursuant to Fed. R. Civ. P. 37(c)(2), seeking attorneys' fees and costs incurred since March 31, 2015, when Ohio Casualty served its Responses and Objections to Requests for Admissions. Twin City argues that Ohio Casualty should have admitted 26 of Twin City's 51 Requests for Admission ("RFAs"). Had it done so, Twin City claims that it would not have taken as much discovery as it did, and would also have prevailed on summary judgment, thereby obviating the need for trial. (Motion at 1-3.) Twin City seeks an award of all the expenses it incurred since Ohio Casualty's failure to admit the RFAs – $400,856, consisting of $334,357 in attorneys' fees and $66,499 in costs – or, in the alternative, all expenses since the Court's denial of the cross-motions for summary judgment – $259,581 ($214,143 in attorneys' fees and $45,438 in costs), and in addition, the fees it incurred in making the Motion. (Motion at 21-22.)

## DISCUSSION

**I.    Legal Standard**

**A. Requests for Admission Under Rule 36**

Requests for admission are governed by Federal Rule of Civil Procedure 36 and apply to "facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a)(1)(A). They are not a discovery device, such as interrogatories, document demands, or depositions, "nor are they to be considered substitutions for them." *Hallmark Licensing LLC v. Dickens Inc.*, No. 17-CV-2149 (SJF) (AYS), 2018 WL 6573435, at *11 (E.D.N.Y. Dec. 13, 2018) (internal quotations omitted). This is because "'they presuppose that the party proceeding under Rule 36 knows the facts or has the document and merely wishes its opponent to concede their genuineness.'" *Pasternak v. Dow Kim*, No. 10-CV-5045 (LTS) (JLC), 2011 WL 4552389, at *5 (S.D.N.Y. Sept. 28, 2011) (*quoting* 8B, Wright, Miller & Marcus, *Federal Practice and Procedure,* § 2253 at 324) (brackets omitted).

3

Requests for admission "are extremely useful tools, particularly at the conclusion of discovery, because 'their sole purpose is to streamline the presentation of evidence at trial.'" *Pasternak*, 2011 WL 4552389, at *5 (quoting *T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co.*, 174 F.R.D. 38, 43 (S.D.N.Y. 1997)). They "eliminat[e] the necessity of proving facts that are not in substantial dispute," thereby reducing the costs of litigation. *Pasternak*, 2011 WL 4552389, at *5.

Requests for admission are not intended to usurp the factfinder's ability to make credibility determinations at trial. While requests for admission serve an important function in narrowing the scope of issues to be litigated, they should not be construed "to subsume the judicial function contained in Rule 52(a) to weigh and evaluate testimony." *Kendrick v. Sullivan*, No. 83-CV-3175 (CRR), 1992 WL 119125, at *3 (D.D.C. May 15, 1992).

### B. Rule 37 Sanctions for Failure to Admit

When a party fails to admit a fact that the requesting party later proves to be true, Rule 37(c)(2) permits the requesting party to recover reasonable expenses, including attorneys' fees, incurred in proving that fact unless:

> (A) the request was held objectionable under Rule 36(a);
> (B) the admission sought was of no substantial importance;
> (C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or
> (D) there was other good reason for the failure to admit.

Fed. R. Civ. P. 37(c)(2). The 1970 Advisory Committee Notes for Rule 37 emphasize that the "true test under Rule 37(c) is not whether a party prevailed at trial but whether he acted reasonably in believing that he might prevail." Fed. R. Civ. P. 37(c) advisory committee's note (1970); *see also United States v. Pecore*, 664 F.3d 1125, 1137 (7th Cir. 2011). Courts have held that sanctions against the responding party are only appropriate if its belief was unreasonable, *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1326 (11th Cir. 2004), if it did not proceed in good faith, *Magnetar Techs. Corp. v. Intamin, Ltd.*, 801 F.3d 1150, 1161 (9th Cir. 2015), or if it knew or should have known the

4

claim was meritless at the time it failed to admit, *Howard Opera House Assoc. v. Urban Outfitters, Inc.*, No. 99-CV-140, 2002 U.S. Dist. LEXIS 26258, at *9 n.3 (D. Vt. Apr. 17, 2002).

A party has "reasonable ground" under Rule 37(c)(2)(C) to believe it might prevail at trial where the admission requested involves a difficult factual question, or legal conclusions. *See, e.g., Bd. of Directors, Water's Edge, a Condo. Unit Owner's Ass'n v. Anden Grp.*, 136 F.R.D. 100, 106–07 (E.D. Va. 1991) (whether there was a manufacturing defect constituted a "complex and contested factual matter"); *Ronis v. Carmine's Broadway Feast, Inc.*, No. 10-CV-3355 (TPG), 2012 WL 3929818, at *10 (S.D.N.Y. Sept. 7, 2012) (emails containing ambiguous language provided reasonable grounds to deny requested admissions).

Only expenses that could have been avoided by an admission are recoverable pursuant to Rule 37(c)(2). *See Guzik v. Albright*, No. 16-CV-2257 (JPO) (DF), 2019 WL 1448358, at *4 (S.D.N.Y. Feb. 8, 2019); *see also Haiping Su v. Nat'l Aeronautics & Space Admin.*, 711 F. App'x 444, 445 (9th Cir. 2018). Failure to identify the portion of fees and costs properly attributed to the failure to admit will preclude recovery. *See Read-Rite Corp. v. Burlington Air Express, Ltd.*, 186 F.3d 1190, 1199–200 (9th Cir. 1999), *as amended on denial of reh'g and reh'g en banc* (Sept. 27, 1999).

## II. <u>Analysis</u>

Twin City contends that Ohio Casualty should have admitted 26 RFAs covering five principal areas: (1) that Aguilar made no settlement demand in the Underlying Action prior to the verdict in the liability phase of the Underlying Action (RFA Nos. 1, 2, 4, 5, 8, and 23); (2) that Twin City was under no obligation to extend settlement offers absent a settlement demand (RFA Nos. 10 through 14); (3) that prior to the liability phase in the Underlying Action, there was no opportunity to settle the matter at a time when "serious doubts" about Sanchez's liability had been removed (RFA Nos. 15, 16, 18, 20, 21, and 22); (4) that Aguilar would not have settled the case prior to the

5

liability trial (RFA Nos. 25 through 29); and (5) when Ohio Casualty knew about the claim, and when it opened a file (RFA Nos. 34, 36, 44, and 51). (*See* Motion at 1-2.)

### A. Admissions Regarding the Existence of Settlement Demands by Aguilar

Twin City argues that Ohio Casualty unjustifiably denied RFA Nos. 1, 2, 4, 5, and 8, which seek admissions that prior to the liability trial in the Underlying Action, Aguilar never made a settlement demand to Twin City for a specific dollar amount, including a dollar amount at or below the limit of Twin City's primary policy. (Motion at 5-6, 10.) It also sought an admission through RFA No. 23 that there was "no opportunity to settle the Underlying Action" prior to the verdict in the Underlying Action. (*See* "RFA Objections," Ex. A to the Declaration of Michael P. Mullins, Dkt. 116-1.)

Twin City contends that Ohio Casualty's refusal to admit these requests was improper in light of sworn affidavits and deposition testimony from the attorneys representing Twin City and Aguilar in the Underlying Action, which stated uniformly that Aguilar did not make any settlement demand. (Motion at 8-9.) While conceding that "Ohio Casualty might have been justified, looking at the written record alone, in believing that there might have been a settlement demand," Twin City argues that "the reasonableness of that initial assumption evaporated once the sworn testimony of *each and every* witnesses [sic] corroborated the same central fact: There was never a settlement demand." (*Id.* at 10 (emphasis in original).)

Ohio Casualty argues that it denied the RFAs based on the evidentiary record, which included entries in Twin City's case file suggesting that settlement negotiations did occur, including the making of settlement demands, and that it was not required to accept the deposition testimony proffered by Twin City as conclusive. (Memorandum in Opposition ("Opp. Mem.") at 4, Dkt. 122; App'x. A thereto, Dkt. 122-1.)

6

The undersigned concludes that the responses to these RFAs are not sanctionable because Ohio Casualty had "reasonable ground" to believe that it might prevail on the matter of whether a settlement demand had been made. Rule 37(c)(2)(C). While the sworn statements proffered by Twin City were consistent that there was no "settlement demand," Ohio Casualty was not required to accept even the uncontradicted deposition testimony or declarations of hostile or interested witnesses as true. Responding parties may "essentially refuse to take the testimony and declarations of these witnesses at face value, even if [they] have no contradictory evidence under their control." *Kendrick*, 1992 WL 119125 at *2. The factfinder alone can assess the credibility of witnesses. *Id.* "The absence of contradictory information in the record … simply means that [the responding party] is unable to deny the truthfulness of what various deponents testified occurred . . ." *T. Rowe Price*, 174 F.R.D. at 44. The responding party is not required to admit those facts, since "Rule 36 responses become, in effect, sworn evidence that is binding upon the respondent at trial." *Id.* A responding party "is not compelled to be bound by a version of events presented by third parties . . ." *Id.* Ohio Casualty was entitled to cross-examine the witnesses and challenge their credibility at trial. It would then be up to the factfinder to credit those statements or not, and weigh them against all the evidence presented.

Moreover, Ohio Casualty had evidentiary support for contradicting the statements that no "settlement demand" was made. *See, e.g., Zhejiang Tongxiang Imp. & Exp. Corp. v. Asia Bank, N.A.*, No. 98-CV-8288 (JSM), 2003 WL 21697893, at *1 (S.D.N.Y. July 21, 2003) (reasonable ground to deny admission request exists where the responding party possesses information or documents to contradict the admission requested). Ohio Casualty's responses to the RFAs describe various communications between counsel for Sanchez and Aguilar in the three years before the liability trial, during which different settlement numbers were discussed both at and below $1 million. (*See* Motion at 6-7; RFA Objections.) The Court also drew from the record developed during discovery

7

and submitted in support of the summary judgment motions, to detail numerous "Contemporaneous Settlement Discussions" between counsel in the Underlying Action. (SJO at 4-7.) Some of these discussions could be considered to contain "settlement demands." For example, on July 11, 2012, "Aguilar's counsel indicated that 'she "needed" to put $250,000 in plaintiff's pocket.'" (*Id.* at 5.) On February 26, 2013, "Defendant's home-office consultant informed Plaintiff's claim handler that there was a $1 million demand and that Defendant had offered $75,000 in response." (*Id.* at 6.) And on March 14, 2013, "Aguilar's counsel informed Defendant's counsel that Aguilar's bottom line to settle pre-trial was $850,000 and that her formal demand would exceed $1 million." (*Id.* at 7.)

Indeed, the Court acknowledged the conflict between the affidavits and the written records, noting that Twin City's affidavits "are contradicted by several entries in the case file that suggest settlement negotiations occurred." (SJO at 20.) With regard to this conflict, the Court concluded that "credibility is not appositely resolved on summary judgment" and "[q]uestions regarding credibility are issues for the jury to resolve based on the evidence adduced at trial." (*Id.* at 23.)

Twin City seems to challenge the reasonableness of Ohio Casualty's belief that it might prevail on this matter, by arguing, "Rather than recognizing that it had no viable claim, Ohio Casualty clung to the scant documentary evidence that it liked and ignored the mountain of testimonial evidence that it disliked." (Motion at 21.) The undersigned disagrees. Whether there are mountains or molehills, a responding party is entitled to rely on the documentary evidence, and Rule 37 does not impose sanctions unless that reliance is unreasonable. Ohio Casualty's reliance here was not unreasonable.

Finally, Ohio Casualty properly denied the request for admission that there was "no opportunity to settle" in RFA No. 23. Rule 36 compels admissions of "objectively observable fact" once they become "unequivocally established." *Bd. of Directors, Water's Edge, a Condo. Unit Owner's*

8

*Ass'n v. Anden Grp.*, 136 F.R.D. 100, 102 (E.D. Va. 1991) (Defendant should have admitted fact that certain plywood had so deteriorated by time of lawsuit that it had to be replaced). However, admission is not required for "complex and contested factual matter" or "complex issues of both fact and law." *Id.* at 106-07 (construction company reasonably did not admit that there was a manufacturing defect). Whether there was an "actual opportunity to settle" is a complex issue of fact and law, to which the Court devoted a lengthy discussion in its Summary Judgment Order. (SJO at 19-23.) The Court concluded that the evidence could allow a jury to draw inferences regarding lost opportunities to settle, but that there were also facts in the record "that would allow a jury to reasonably conclude that Aguilar did in fact, at least at one point, have a desire to settle." (SJO at 22.) Therefore, Ohio Casualty's belief that it might prevail on this matter at trial was not unreasonable.

### B. Admissions Regarding Twin City's Obligation to Extend Settlement Offers

Twin City next criticizes Ohio Casualty's response to RFA Nos. 10 through 14, which were "aimed at establishing that, absent a demand for settlement, Twin City had no obligation to make a settlement offer." (Motion at 10.) Twin City again argues that there was "ample and uncontradicted testimony that there was no settlement demand and no meaningful settlement discussions," and also that at trial, various witnesses testified about "how settlement negotiations work, and the need for a demand from the plaintiff to kick start such discussions." (Motion at 11.) It also claims, without citing caselaw, that to the extent the request may call for a conclusion of law, cases supporting this objection "are no longer authoritative." (*Id.* (internal quotation and citation omitted).)

Ohio Casualty repeats the arguments for its denials on the settlement demand issue, and also argues that it was not required to admit these RFAs because they inappropriately sought only legal conclusions, as opposed to the application of law to fact. (Opp. Mem. at 4-5, 7, 9.)

9

The undersigned finds that Ohio Casualty was justified in denying RFA Nos. 10 through 14. As discussed *supra*, it was not required to accept even uncontradicted testimony from interested parties, and it relied on documentary evidence that there was a settlement demand. Moreover, the RFAs were objectionable because they sought admissions about conclusions of law regarding Twin City's obligation to settle the Underlying Action within the primary policy limits. While Rule 36 permits requests for admission applying law to fact, they may not be used to compel admission of a conclusion of law. *See, e.g., Music Group Macao Commer. Offshore, Ltd. v. Foote*, No. 14-CV-03078 (JSC), 2015 WL 579688, at *2 (N.D. Cal. Feb. 11, 2015) (objection proper because request for admission that attack on computer network was illegal calls for legal conclusion). Furthermore, the existence of an "obligation" can derive from law, industry practice, or custom. Twin City's invocation of "how settlement negotiations work" alludes to this ambiguity. Without clarification, the request is not for the kind of unequivocal, objective factual information that requires admission. *See Chem. Eng'g Corp. v. Essef Indus., Inc.*, 795 F.2d 1565, 1575 (Fed. Cir. 1986) (test results of pH levels).

### C. <u>Admissions Regarding Opportunities to Settle Prior to the Liability Trial</u>

Twin City argues that Ohio Casualty should have admitted that there was "no actual opportunity to settle" the Underlying Action prior to the liability verdict (RFA No. 15), and that there were "serious doubts" about the liability of the insured driver Sanchez (RFA Nos. 16, 18, 20, 21, and 22). (Motion at 12-15; RFA Objections.) Twin City argues that Sanchez's "liability was far from clear," and Ohio Casualty should have admitted that there were "serious doubts" about Sanchez's liability, instead of relying on its "self-serving" analysis of the facts of the Underlying Action to assert that "Twin City should have predicted that the jury would return a verdict finding Mr. Sanchez liable for being rear-ended." (Motion at 12, 16.) Twin City complains that as a result of Ohio Casualty's failure to admit these requests, it was forced to "develop a battery of evidence"

10

to dispute Ohio Casualty's theory that Twin City should have predicted that the jury would find Sanchez 100 percent liable for the accident. (*Id.*)

The undersigned finds that Ohio Casualty had "reasonable ground" for believing that it might prevail on whether there was an "actual opportunity to settle" the Underlying Action or that there were no "serious doubts" regarding Sanchez's liability. As discussed *supra*, there was sufficient documentary evidence that there was an "actual opportunity to settle." (*See supra* Section II.A.) Furthermore, assessments of Sanchez's liability involved complicated factual questions, as reflected in Ohio Casualty's lengthy response to RFA No. 16, which details the differing assessments of liability based on different factors, from 2008, 2010, 2012, and 2013. (Motion at 13-14.) Views of Sanchez's liability evolved as Twin City and its lawyers assessed Sanchez's credibility, the likelihood of a third-party witness appearing to testify at trial, and the expert opinion, which concluded that "the 'times, speed and distances to which Mr. Sanchez testified violated the laws of physics.'" (Motion at 13 (quoting objections to RFA No. 16).) Views on the likelihood of success varied from "50/50 or more on comparative" in October 2010, to a view in April 2012 that there was a 40 to 60% chance of a defense verdict if the third-party witness testified, and 30 to 40% if he didn't. (*Id.*) Whether these constituted "serious doubts" as to Sanchez's liability is not unequivocal, objective factual information. *See Essef Indus., Inc.,* 795 F.2d at 1575.

### D. Admissions Regarding Aguilar's Willingness to Settle Prior to the Liability Trial

Twin City argues that Ohio Casualty should have admitted that Aguilar would not have settled the Underlying Action prior to the liability trial (RFA Nos. 25 through 29). (Motion at 16-18.) Twin City again argues that it was unreasonable for Ohio Casualty to deny these RFAs, considering the testimony and affidavits supplied by Twin City from its own and Aguilar's counsel. (*Id.* at 18.)

11

Ohio Casualty argues that its responses to these RFAs were appropriate, based on the evidentiary record, and they went to the "heart of the parties' dispute." (Opp. Mem. at 4-5.) It also contends that it was not required to admit facts about Aguilar's state of mind regarding settlement. (*Id.* at 8, 10.)

The undersigned agrees with Ohio Casualty that it is not required to accept the facts in RFA Nos. 25 through 29 despite how "clearly" they were established both before and during trial. (Motion at 18.) The evidentiary record provided reasonable ground for Ohio Casualty to believe that it might prevail on the matter of Aguilar's willingness to settle. As the case file entries indicate, there were points before the liability trial when Aguilar may have been willing to settle. For example, in its response to RFA No. 29, Ohio Casualty described a time in or shortly after September 2010 when Aguilar's lawyers informed defense counsel that Aguilar was going through a divorce, that his assets were frozen, and that he was prepared for an offer below $500,000. (*See* objections to RFA No. 29.) This provided a reasonable ground for Ohio Casualty to believe that it might prevail on this matter.

In addition, whether Aguilar "would not have accepted a settlement offer within the limits of the Twin City Policy," as requested in RFA No. 29, requires speculation regarding the thoughts and actions of a third party. The documentary evidence showed that he might have accepted such an offer, but also that he might not have. Such a record does not support Twin City's contention that Ohio Casualty's belief that it might prevail on the matter was unreasonable.

### E. Admissions Regarding Ohio Casualty's Knowledge of the Insurance Claim and Its Actions

Twin City argues that Ohio Casualty should have admitted RFA Nos. 34, 36, and 44, requesting admissions that Ohio Casualty was aware of the Underlying Action in 2006 and did not open a file on the case until 2013, because Ohio Casualty should admit facts "plainly within its own knowledge." (Motion at 20.) It also argues that Ohio Casualty improperly denied RFA No. 51 that

12

before the liability trial, Ohio Casualty "believed it unlikely that Mr. Sanchez would be found liable," based on the lack of documentary evidence. (Motion at 18-19.) Ohio Casualty responded to RFA Nos. 34, 36 and 44 by stating that it "lacks knowledge or information to admit or deny" the request; it avers that it was acquired in 2007 by Liberty Mutual Insurance Company, so it was not personally aware of its pre-acquisition conduct. (Opp. Mem. at 6.) Nevertheless, Ohio Casualty also responded that there is "some reference in Ohio Casualty's claim file to December 2006," and admitted "that the Twin City claim file reflects that Twin City communicated with Ohio Casualty in 2006." (Motion at 19; *see also* objections to RFA Nos. 34, 36, and 44.) Ohio Casualty denied RFA No. 51 based on a letter it sent to Twin City dated March 7, 2013, demanding that Twin City settle the case within its $1 million liability limit. (Motion at 20; *see also* objections to RFA No. 51.)

A responding party need not admit facts about third parties not in its control, so long as it has made "reasonable inquiry" that "the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fed. R. Civ. P. 36(a)(4). "Generally, a 'reasonable inquiry' is limited to review and inquiry of those persons and documents that are within the responding party's control." *T. Rowe Price*, 174 F.R.D. at 43; *see also Kendrick*, 1992 WL 119125, at *3 (review of documentary evidence in plaintiffs' possession was sufficient to constitute reasonable inquiry). In its responses to RFA Nos. 34, 36 and 44, Ohio Casualty claims to have made "reasonable inquiry" as required. Twin City does not dispute the reasonableness of the inquiry, arguing only that this information was "plainly" within Ohio Casualty's knowledge. (Motion at 20.) Twin City does not allege what more Ohio Casualty should have done to obtain the requisite knowledge to respond. Accordingly, the undersigned finds that Ohio Casualty made reasonable inquiry in order to respond to RFA Nos. 34, 36 and 44, and that its responses were proper.

With regard to RFA No. 51, the undersigned finds that Ohio Casualty had reasonable ground to believe it might prevail on this matter, because the documentary evidence supported

13

uncertainty with respect to Sanchez's liability in the Underlying Action.

Accordingly, because Ohio Casualty has demonstrated that it had reasonable grounds to believe that it might prevail on the matters pertaining to the 26 RFAs at issue, and for all the other reasons discussed above, the undersigned respectfully recommends that Twin City not be awarded expenses pursuant to Rule 37(c)(2).[2]

## CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that Defendant Twin City's Motion for Expenses Incurred to Prove Facts Not Admitted by Plaintiff Ohio Casualty be denied.

Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file any just objection waives the right to further judicial review of this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated: Brooklyn, New York
March 23, 2020

---

[2] Even if Twin City could have demonstrated that some of the RFAs were improperly denied, its request for all expenses it incurred after Ohio Casualty served its RFA Objections (or after the date of the Summary Judgment Order) is not supported in its briefing. Twin City has not demonstrated what attorneys' fees and costs were expended in proving the issues Ohio Casualty denied. For example, Twin City has not provided the name of any witness whose testimony could have been avoided, but for Ohio Casualty's failure to admit the RFAs. To argue that the *entire* trial, indeed even the summary judgment motions, could have been avoided (Motion at 4, 21, and 22), fails to meet the requirement that the requesting party identify the portion of fees and costs properly attributed to the failure to admit. *See Read-Rite Corp.*, 186 F.3d at 1199-200. Thus, even without producing invoices and attorney time sheets, Twin City has not demonstrated any causal link between the failure to admit the RFAs and its unnecessary expenses.